## DE RONDE v. UNITED STATES (No. 66).[1]

BLEACHER'S BLUE CONTAINING FERROCYANIDE OF IRON.

An article containing ferrocyanide of iron that is used exclusively for bleaching purposes was not dutiable as a "color" under paragraph 45, tariff act 1897, but was dutiable under section 6 of that act.

United States Court of Customs Appeals, November 30, 1910.

APPEAL from a decision of the Board of United States General Appraisers, G. A. 6624 (T. D. 28253).

[Reversed.]

*Walden & Webster (Howard T. Walden* of counsel) for appellants.

*D. Frank Lloyd,* Assistant Attorney General, and *Charles E. McNabb,* Special Attorney (*Charles Duane Baker* on the brief(, for the United States.

Before MONTGOMERY, HUNT, SMITH, BARBER, and DE VRIES, Judges.

MONTGOMERY, Presiding Judge, delivered the opinion of the court:

This is an appeal from a decision of the Board of General Appraisers which confirmed a decision of the collector of customs of New York in assessing duty on bleacher's blue. The merchandise was assessed under paragraph 45 of the tariff law of 1897, which provides for—

blues, such as Berlin, Prussian, Chinese, and all others, containing ferrocyanide of iron, in pulp, dry or ground in or mixed with oil or water, eight cents per pound.

The appellant claims that the importation was dutiable under section 6 at the rate of 20 per cent ad valorem as an unenumerated manufactured article.

The contention is that paragraph 45 provides for colors—that is, paints or dyes—only; that bleacher's blue is not a color, and that as there is no other specific provision under which this article is dutiable it comes under the general provisions of section 6.

We think an examination of the statute clearly indicates that the blues referred to in paragraph 45 are the blues in paints and colors. With the heading under which this paragraph occurs, it would read as follows:

Paints, colors, and varnishes. * * * blues, such as Berlin, Prussian, Chinese, and all others, containing ferrocyanide of iron, in pulp, dry or ground in or mixed with oil or water, eight cents per pound.

We think that the arrangement of this paragraph in the statute itself under the heading of "Paints, colors, and varnishes" is not to be ignored.

It is argued by counsel for the Government that if it be conceded that some of the blues enumerated in paragraph 45 are colors, nevertheless the phrase "all others" should be construed to mean all other blues, and so construed, it fairly includes blues which may not be colors, provided they contain ferrocyanide of iron ground in or mixed with water. But we thing not only the relation with which these

[1] Reported in T. D. 31112 (19 Treas. Dec., 1242).

words appear in the text of paragraph 45, but the heading under which that paragraph is placed in the statute itself, indicates that two elements were essential to bring the importation within the terms of that paragraph: First, it should consist of colors—that is, a paint or preparation to be used for dyeing—and, second, that it should answer to the description of blues such as Berlin, Prussian, Chinese, or some other containing ferrocyanide of iron. That the present importation contains a small portion of ferrocyanide of iron is conceded, the testimony showing that it contains 91.06 per cent of water and volatile substances, 8.94 per cent of solids, of which about 3.5 per cent is ferrocyanide of iron, 1 per cent of coal-tar color, the remainder of the solids consisting of other ingredients which are not determined.

The use to which the importation is put is exclusively for sale to manufacturers for bleaching purposes. In the bleaching process 1 pound of this production is used with 4,000 pounds of corn, potato, or wheat starch dissolved in water. The purpose of its use is not to give color to the product, but to make it white. If the word "colors" is used in the act to indicate a product to be used in producing colors or in coloring, either by spreading on the surface of a substance or as a dye, it is inapt to describe the importation in question.

A similar question was before the Board of General Appraisers in United States *v.* Berlin Aniline Works, G. A. 6272 (T. D. 27054). The question there presented was whether an extract of Persian berries was properly classified as a color under the provisions of paragraph 58, which occurs under the same heading as paragraph 45, and which imposes a duty upon all paints, colors, pigments, lakes, crayons, etc., not otherwise specially provided for. The article imported was used exclusively for staining food products. It was said by the board:

It does not seem, on a careful reading of paragraph 58, that this article belongs to paints, colors, pigments, etc., which are therein grouped.

This case was, on appeal to the Circuit Court for the Southern District of New York, affirmed on the opinion of the board. (154 Fed. Rep., 925.)

Another case following this is that of In re Protest of Magnus & Lauer, G. A. 6560 (T. D. 28018), in which chlorophyll, a green coloring matter produced from fresh vegetation and used for staining foods and essential oils, was held not to be a color within the meaning of paragraph 58 of the tariff act.

We see no room for distinguishing this case from those cited. As intimated above, the first essential to bring this case within paragraph 45 is to establish that it is a color in the sense in which that term is used in that subdivision of the tariff law. If it be found to be a color, then the next essential is to show that it contains ferrocyanide of iron. Admittedly it does contain this ingredient. But this does not obviate

the necessity of showing that it is a color within the meaning of the paragraph, and it is not such, either in its use or, as we think, in common understanding.

It may be added that this article has been imported since 1884 by the present importers and that it was not until 1906 assessed as a blue containing ferrocyanide of iron, and while it may be true that the Government is not precluded from now contending that it comes within paragraph 45, the fact is significant nevertheless.

We think the importation is subject to duty under section 6 as an unenumerated manufactured article.

The decision of the Board of General Appraisers is reversed.